Christopher A. Larsen, OSB No. 910679
PICKETT DUMMIGAN MCCALL LLP
210 SW Morrison St., 4th Fl.
Portland, Oregon 97204
Tel: 503-223-7770
Fax: 503-227-5350
chris@pdm.legal
*Lead Counsel*

Gabriel Chase, OSB No. 142948
CHASE LAW, PC
621 S.W. Alder St., Ste. 600
Portland, OR 97205
Tel: 503-294-1414
Fax: 503-294-1455
gabriel@chaselawpc.net

Erious Johnson, Jr., OSB No. 130574
HARMON JOHNSON LLC
University Station Executive Suites
698 12th St. SE
Ste 240/No. 4
Salem, OR 97301
Tel: (503) 991-8545
Fax: (503) 622-8545
Ejohnson.HJLLC@gmail.com

Joe Piucci, OSB No. 135325
PIUCCI LAW LLC
900 SW 13th Ave., Ste. 200
Portland, OR 97205
Tel: 503-228-7385
Fax: 503-228-2571
joe@piucci.com

David D. Park, OSB No. 803358
ELLIOTT & PARK, P.C.
324 S. Abernethy Street
Portland, Oregon 97239-4356
Tel: 503-227-1690
Fax: 503-274-8384
dave@elliott-park.com

Michelle R Burrows, OSB No. 861606
MICHELLE R. BURROWS P.C.
1333 Orenco Station Parkway # 525
Hillsboro, OR 97124
Tel: 503-241-1955
michelle.r.burrows@gmail.com

Jane L. Moisan, OSB No. 181864
PEOPLE'S LAW PROJECT
818 S.W. 4th Ave. #221-3789
Portland, OR 97204
Tel: 971-258-1292
peopleslawproject@gmail.com

Attorneys for Plaintiffs

**1 – PLAINTIFF'S COMPLAINT**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANGELINE MEAD, Individually, | Civil Action No. 3:21-cv-00672 |
| Plaintiff, | |
| | **COMPLAINT** |
| | *Bivens* Fourth Amendment, Excessive Force |
| v. | |
| GABRIEL RUSSELL, Regional Director with the Department of Homeland Security's Federal Protective Service; ALLEN JONES; RUSSEL BURGER; ANDREW SMITH; MARK MORGAN; RICHARD CLINE; JOHN DOE SUPERVISORY DEFENDANTS 1-60, agents of the U.S. Marshals Service, Federal Protective Service, U.S. Department of Homeland Security and U.S. Customs and Border Protection, acting in concert and in their Individual capacities, and JOHN DOE PATROL LEVEL DEFENDANT 62, in his Individual capacity, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

This is an action brought to vindicate Plaintiff's rights under the Fourth Amendment of

the Constitution of the United States pursuant to *Bivens v. Ten Unnamed Federal Officers*, 403

U.S. 388 (1971).

**2 – PLAINTIFF'S COMPLAINT**

On night of July 25-26, 2020, Plaintiff Angeline Mead participated in a Black Lives Matter protest in downtown Portland, Oregon. At approximately 1:20 a.m. on July 26, 2020, an unidentified federal law enforcement officer violated Ms. Mead's constitutional rights by intentionally aiming and shooting her in the right eye with a high velocity projectile at a distance of approximately 20-30 feet.

When defendants seized Plaintiff through the intentional application of excessive and lethal force, Plaintiff had no way of knowing who they were because the federal law enforcement officers, in a moment of historic outcry for police accountability, were devoid of any individual identifiers.

Plaintiff seeks an award of compensatory and punitive damages.

**BACKGROUND AND CONTEXT**

"*Each time a [person] stands up for an ideal, or acts to improve the lot of others, or strikes out against injustice, he sends forth a tiny ripple of hope.*" – **Robert F. Kennedy**

1.

On May 25th, 2020, a Black man named George Floyd was murdered in Minneapolis, Minnesota, by an officer of the City of Minneapolis Police Department, Derek Chauvin. Chauvin held his knee to Floyd's neck for at least eight minutes and 46 seconds while his fellow police officers stood by and casually watched Floyd die. Floyd's final words were, "I can't breathe." Chauvin and his fellow officers ignored the pleas for mercy coming from bystanders, including the teenage girl whose footage alerted the world to this particular instance of police brutality.

////

////

**3 – PLAINTIFF'S COMPLAINT**

2.

Following George Floyd's gruesome public murder, protests erupted nationwide in support of the Black Lives Matter (BLM) movement and against systemic racism, police brutality and use of excessive force. Across the country, police met these protests with violence, brutality and excessive force.



3.

Although George Floyd was one of the more nationally known instances of State-Sanctioned execution—it was by no means an isolated incident. Police in the United States killed 164 Black people over the first 8 months of 2020.[1]

////

////

////

////

---

[1] Li Cohen, *Police in the U.S. killed 164 Black people in the first 8 months of 2020. These are their names. (Part I: January-April)*, CBS News (2020), https://www.cbsnews.com/pictures/black-people-killed-by-police-in-the-u-s-in-2020/ (last visited April 28, 2021); *(Part II: May-August)*, https://www.cbsnews.com/pictures/black-people-killed-by-police-in-the-us-in-2020-part-2/ (last visited April 28, 2021).

**4 – PLAINTIFF'S COMPLAINT**

4.

On May 28, 2020, thousands of people began months of sustained protests in Portland, Oregon with nightly demonstrations occurring in downtown Portland across from the Mark O. Hatfield Courthouse located at 1000 SW Third Avenue in downtown Portland ("Hatfield Courthouse") and the Multnomah County Justice Center.

5.

Portland Police Bureau officers met these protests with excessive force, indiscriminately attacking the crowd with pepper balls, batons, sonic weapons, and, most notably, tear gas, in the midst of a global pandemic that attacked respiratory systems.

6.

In response to the local community's calls for increased police accountability, emergency court orders, city directives, and new police reforms in state law placed limitations on the use of tear gas and other force between June 9, 2020 and June 30, 2020.[2]

7.

On June 26, 2020 and in reaction to the measures taken by state and local actors to de-escalate police violence, former President Donald J. Trump issued Executive Order 13933, "On Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence," which resulted in the deployment of federal agents to Portland.  Surrounding that deployment, the public messaging from the Trump Administration was that Portland had not been tough enough on protesters, and the federal government was going to take charge and quell the protests.

////

---

[2] Univ. Mich. Law School, Civil Rights Litigation Clearinghouse, *Don't Shoot Portland v City of Portland*, 3:20-cv-00917 (D. Or.), https://clearinghouse.net/detail.php?id=17600 (last visited April 28, 2021).

**5 – PLAINTIFF'S COMPLAINT**

8.

On or about July 1, 2020, unidentified federal law enforcement officers in military fatigues emerged for the first time from the Hatfield Courthouse and engaged with non-violent protesters as if they were enemy combatants. In keeping with the former president's messaging, the federal law enforcement response to the protests did not fail to provide visuals akin to a warzone.

 

 

9.

Rather than employing crowd control tactics with a focus on protecting federal property, federal law enforcement officers escalated violence on a nightly basis by indiscriminately targeting nonviolent and non-resisting individuals for significant force, up to and including force capable of causing serious bodily harm or death.

**6 – PLAINTIFF'S COMPLAINT**






10.

Supervisory officers of multiple federal law enforcement agencies acting in concert observed, ordered, authorized, approved and/or knowingly acquiesced in the escalation of force including chasing down protesters, legal observers, medics, journalists, and bystanders, pursuing them through the streets as many as ten blocks beyond federal property while simultaneously firing potentially lethal munitions including pepper-spray balls, rubber bullets, tear gas cannisters and flashbang grenades.

**JURISDICTION**

11.

This action is brought pursuant to the Fourth Amendment to the United States Constitution and *Bivens v. Ten Unnamed Federal Officers*, 403 U.S. 388 (1971), for violations of constitutional rights held by all persons.

**7 – PLAINTIFF'S COMPLAINT**

12.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

13.

Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon, and because Defendants are subject to personal jurisdiction in the District of Oregon.

## PARTIES

14.

Plaintiff Angeline Mead is and, at all relevant times was, a resident of Portland, Oregon.

**Defendants**

a. **Supervisory Defendants**

15.

At all material times, "Operation Diligent Valor" was a coordinated effort between the Department of Homeland Security (DHS), by and through the Federal Protective Service (FPS), U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP) (collectively, "DHS Forces"), working with the United States Marshals Services (USMS). DHS and USMS contributed supervisory staff (Supervisory Defendants) and subordinate patrol level staff (Patrol Level Defendants). Supervisory and Patrol Level Defendants are sued in their individual capacities for their own actions herein. At all relevant times, all these defendants were acting under color of law.[3]

---

[3] Marissa J. Lang, Josh Dawsey, Devlin Barrett and Nick Miroff, *Operation Diligent Valor: Trump showcased federal power in Portland, making a culture war campaign pitch*, The Washington Post (July 24, 2020), https://www.washingtonpost.com/national/portland-protests-operation-diligent-valor/2020/07/24/95f21ede-cce9-11ea-89ce-ac7d5e4a5a38_story.html. (last visited April 28, 2021).

**8 – PLAINTIFF'S COMPLAINT**

**b.      DHS Supervisory Defendants**

16.

At all material times, **Gabriel Russell** was a Regional Director with the DHS's Federal Protective Service Region 10. Defendant Russell was the Commander of the DHS Rapid Deployment Force for Operation Diligent Valor. He was responsible for and exercised tactical direction and control over DHS Forces stationed in and/or deployed to Portland, Oregon for Operation Diligent Valor. Defendant Russell is sued in his individual capacity.

17.

At all material times, **Allen Scott Jones** was the Deputy Director for Operations for DHS FPS Region 10 and was the Deputy Incident Commander of all DHS forces stationed in and/or deployed to Portland, Oregon, for Operation Diligent Valor. Defendant Jones is sued in his individual capacity.

18.

At all material times, **Mark Morgan** was the Acting Commissioner of CBP.  On information and belief, Defendant Morgan authorized and oversaw the deployment of CBP's Border Patrol Tactical Unit (BORTAC), ostensibly designated with FPS authority under 40 U.S.C. § 1315 and deployed to Portland, Oregon, as part of Operation Diligent Valor.

19.

At all times material, **Richard "Kris" Cline** was the Deputy Director of FPS. On information and belief, Defendant Cline authorized and oversaw the deployment of FPS forces, including CBP and ICE forces ostensibly designated with FPS authority, to Portland, Oregon, as part of Operation Diligent Valor.

////

**9 – PLAINTIFF'S COMPLAINT**

20.

At all material times, John Doe Supervisory Defendants from each of FPS, CBP and ICE were tactical commanders, area commanders, supervisors, and team leaders who were responsible for direction and control of all subordinate Patrol Level DHS forces stationed and/or deployed to Portland, Oregon, for Operation Diligent Valor and whose identities are presently unknown to Plaintiffs. At all material times, John Doe Supervisory Defendants from USMS were onsite (at or near Hatfield Courthouse) commanders, supervisors, and team leaders who were responsible for direction and control of all subordinate Patrol Level USMS forces stationed at and/or deployed to the Hatfield Courthouse during the month of July 2020 and whose identities are presently unknown to Plaintiffs.

21.

John Doe Supervisory Defendants 1-15 are supervisory officers of the Federal Protective Services, sued in their individual capacities.  At all times material, John Doe Supervisory Defendants 1-15 were acting within the scope of their employment and under color of law.

22.

John Doe Supervisory Defendants 16-30 are supervisory officers of U.S. Immigration and Customs Enforcement, sued in their individual capacities. At all times material, John Doe Supervisory Defendants 16-30 were acting within the scope of their employment and under color of law.

23.

John Doe Supervisory Defendants 31-45 are supervisory officers of U.S. Customs and Border Protection, sued in their individual capacities. At all times material, John Doe

**10 – PLAINTIFF'S COMPLAINT**

Supervisory Defendants 31-45 were acting within the scope of their employment and under color of law.

24.

At all times material DHS Supervisory Defendants, knew or should have known that DHS lacked lawful authority to issue or enforce a dispersal order on City of Portland streets.

**c.     USMS Supervisory Defendants**

25.

USMS Supervisory and Patrol Level Defendants are employees of the U.S. Department of Justice and are not subject to Defendant Russell's command and control.

26.

At all material times, **Russel Burger** was the U.S. Marshal for the District of Oregon. Upon information and belief, Defendant Burger was responsible for and exercised tactical direction and control over all USMS forces stationed in or deployed to Portland, Oregon, for protection of the Hatfield Courthouse and nearby federal properties as part of Operation Diligent Valor. Defendant Burger is sued in his individual capacity.

27.

At all material times, **Andrew Smith** was employed by the USMS as the Assistant Director for the Tactical Operations Division and was responsible for and exercised tactical direction and control over USMS forces, including members of the USMS Special Operations Group (SOG) forces, stationed in or deployed to Portland, Oregon, as part of Operation Diligent Valor. Defendant Smith is sued in his individual capacity.

////

////

**11 – PLAINTIFF'S COMPLAINT**

28.

John Doe Supervisory Defendants 46-60 are supervisory officers of the U.S. Marshals Service, sued in their individual capacities. At all times material, John Doe Supervisory Defendants 46-60 were acting within the scope of their employment and under color of law. At all times material, John Doe Supervisory Defendants 46-60 were onsite (at or near Hatfield Courthouse) commanders, supervisors, and team leaders who were responsible for direction and control of all subordinate Patrol Level USMS forces stationed at and/or deployed to the Hatfield Courthouse during the month of July 2020. John Doe Supervisory Defendants 46-60 had no management control over any employee of DHS.

29.

At all times material, the USMS Supervisory Defendants, including John Doe Supervisory Defendants, knew that USMS lacked lawful authority to issue or enforce a dispersal order on City of Portland streets, to and including SW Fourth Avenue.

**d.    DHS and USMS Patrol Level Defendants**

30.

John Doe Patrol Level Defendant 62 used an unknown munition to shoot Plaintiff Angeline Mead in the right eye as alleged herein.  At all times material the John Doe Patrol Level Defendant 62 was acting within the scope of his/her employment and under color of law. John Doe Patrol Level Defendants 62 is sued in his/her individual capacity.

31.

Plaintiff reserves the right to amend the Complaint to add additional defendants and/or dismiss defendants as discovery proceeds, including without limitation, any supervisor or individual involved in the events alleged in this complaint.

**12 – PLAINTIFF'S COMPLAINT**

**FACTS COMMON TO ALL CLAIMS**

32.

On August 20, 2020, Judge Simon issued a preliminary injunction finding that the federal defendants had been targeting journalists and legal observers during the month of July 2020 with unnecessary and excessive force. Judge Simon found that, "the character of the recent past violations by the Federal Defendants in Portland is particularly egregious" and "the Federal Defendants have not recognized the wrongful nature of their conduct but instead assert that they have only engaged in lawful conduct."[4] The Court further observed, "given the disdainful comments publicly made by the highest officials at the Federal Defendants with respect to journalists, legal observers, Plaintiffs, protesters and the City of Portland, the professional and personal characteristics of the Federal Defendants show that they are likely to be enabled or tempted to engage in future violations."[5]

33.

Through the preliminary injunction, Judge Simon ordered, among other relief, that defendants, "their agents and employees, and all persons acting under their direction are enjoined from arresting, threatening to arrest, or using physical force directed against any person whom they know or reasonably should know is a Journalist or Legal Observer . . . unless the Federal Defendants have probable cause to believe that such individual has committed a crime."

34.

On October 9, 2020, the U.S. Court of Appeals for the Ninth Circuit denied the Federal Defendants' motion to stay Judge Simon's preliminary injunction, observing that, "[a]s of the

---

[4]    *Index Newspapers LLC et.al. v City of Portland et.al,* Case No. 3:20-cv-1035-SI, Opinion & Order Granting Preliminary Injunction, ECF 157 at 54.
[5]    *Id.* at 55.

**13 – PLAINTIFF'S COMPLAINT**

time the preliminary injunction was entered, the district court found that the Federal Defendants

had engaged in a pattern of conduct that had persisted for weeks and was ongoing," and that such

pattern of misconduct was "shocking."[6]

> "The many peaceful protesters, journalists, and members of the general public cannot be punished for the violent acts of others. "[T]he proper response to potential and actual violence is for the government to ensure an adequate police presence … and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Collins v. Jordan*, 110 F.3d. 1363, 1373 (9th Cir. 1996) (internal citations omitted)."[7]

35.

On information and belief, on a nightly basis throughout the month of July 2020, to and

including the night Plaintiff Angeline Mead was subjected to unnecessary and excessive force,

Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory

Defendants who manned the "Incident Command Post" or "Emergency Operations Center"

within the Hatfield Courthouse, observed live feed video of federal law enforcement officers

using unnecessary and excessive force against non-violent protesters, volunteer protest medics,

photojournalists, members of the press, legal observers and bystanders.[8]

36.

On information and belief, on a nightly basis throughout the month of July 2020,

Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory

Defendants observed, or were informed of and knew in real time, or were informed of within 24

hours of their occurrence through internal after-action reporting and/or through external sources

---

[6]    977 F.3d at 826, 829.

[7]    *Id*. at 834.

[8]    See Declaration of Gabriel Russell, *Index Newspapers LLC et.al. v City of Portland et.al,* Case No. 3:20-cv-1035-SI, Dkt 101-5.

**14 – PLAINTIFF'S COMPLAINT**

such as news media, social media and twitter, of at least the following specific acts of

unnecessary and excessive force committed by federal law enforcement officers:

A. On July 5, 2020, without warning or justification, federal agents shoved volunteer medics Christopher Durkee and Savannah Guest to the ground as they were following orders to disburse and beat them with truncheons. Durkee and Guest were not engaged in criminal activity and were not arrested. [*Wise et. al. v. Portland et.al.*, Case No. 3:20-cv-01193]

B. On July 11, 2020, without warning or justification, federal agents shot volunteer medic Savannah Guest multiple times on her feet and ankles with rubber bullets as she was kneeling to provide aid to an injured protester. Guest was not engaged in criminal activity and was not arrested. [*Wise*]

C. On July 11, 2020, without warning or justification, federal agents shot Donovan LaBella in the head with an impact munition while Mr. LaBella was standing across the street from the Hatfield Courthouse and holding a music speaker above his head. Mr. LaBella was peacefully protesting and was not engaged in criminal activity and was not arrested.

D. On July 12, 2020, without any warning or justification, federal agents shot Joe Ketcher in the left leg with a high-velocity projective, causing a left tibial fracture requiring two surgeries. Ketcher was shot as he was engaged in non-violent protest near the Hatfield Courthouse. Ketcher was not engaged in any criminal activity and was not arrested.

E. On July 14, 2020, without warning or justification, federal agents repeatedly shot volunteer medic Christopher Wise multiple times in the legs with pepper balls as he attempted to render aid to protesters suffering from tear gas exposure in Lownsdale Square. Wise was not engaged in criminal activity and was not arrested. [*Wise*].

F. On July 15, 2020, without warning or justification, federal agents shot a tear gas canister directly at Justin Yau, a journalist covering the protests. Yau was not engaged in criminal activity and was not arrested. [*Index Newspapers et. al. v. Portland et. al.*, Case No. 3:20-cv-1035]

G. On July 18, 2020, without warning or justification, federal agents struck Navy veteran Christopher David multiple times with their batons in his torso, lower body, hand and back and sprayed him in the face with a chemical agent. Mr. David was peacefully protesting and not engaged in criminal activity and was not arrested. [*Pettibone et. al. v. Trump et. al.*, Case No. 3:20-cv-01464]

H. On July 18, 2020, at approximately 11:00 p.m., Duston Obermeyer was among a group of peaceful protesters standing on SW Third in front of the Hatfield Courthouse when, without warning or justification, tear gas was launched into the crowd and a phalanx of federal agents moved into position in front of the courthouse. Federal agents then shot Obermeyer in the chest with a chemical munition and struck him in the face and chest with a baton. Obermeyer was peacefully protesting and not engaged in criminal activity and was not arrested. [*Pettibone*]

I. On July 19, 2020, without warning or justification, federal agents shot photojournalist Jungho Kim just below the heart with a less lethal projectile munition as he was photographing their interactions with protesters 30 feet away. Kim was not engaged in criminal activity and was not arrested. [*Index*]

J. On July 19, 2020, without warning or justification, federal agents shot photojournalist Noah Berger twice with less lethal munitions, struck him multiple times with batons and

**15 – PLAINTIFF'S COMPLAINT**

pepper sprayed in his face while he was filming the protests. Berger was not engaged in criminal activity and was not arrested. [*Index*]

K. On July 19, 2020, without warning or justification, federal agents shot James Comstock, a legal observer with the National Lawyers Guild, in the hand while he was standing with his back against a wall near the intersection of SW Fourth and Main making notes on his phone. Mr. Comstock was not engaged in criminal activity and was not arrested. [*Index*]

L. On July 19, 2020, without warning or justification, federal agents shot Nate Haberman-Ducey, a law student and volunteer legal observer, in the right hand with an impact munition, as he was standing holding his bicycle. The impact fractured his right wrist causing him immediate pain and trauma. Haberman-Ducey was a clearly marked legal observer, not engaged in any criminal activity, and was not arrested.

M. On July 20, 2020, without warning or justification, federal agents shot Maureen Healy, a peaceful protester, in her left forehead with an unknown projectile as she was attempting to follow orders to disburse from Lownsdale Square. Healy was not engaged in criminal activity and was not arrested. [*Pettibone*]

N. On July 20, 2020, without warning or justification, federal agents shot Amanda Dunham three times with rubber bullets in her back, upper arm and elbow and deployed tear gas while she was among a group of peaceful protesters near the Multnomah County Justice Center. Dunham was not engaged in criminal activity and was not arrested. [*Western States Center et. al. v. U.S. Dept. of Homeland Security et. al.*, Case No. 3:20-cv-01175].

O. On July 21, 2020, without warning or justification, federal agents shot photojournalist Amy Katz with pepper balls and deployed a tear gas grenade at her feet while she was attempting to document federal agents' activities in the vicinity of the Hatfield Courthouse. Katz was not engaged in criminal activity and was not arrested. [*Index*]

P. On July 21, 2020, federal agents emerged from the Hatfield Courthouse and, without warning or justification, shoved journalist Sarah Jeong, who was walking slowly backward away from the courthouse, with such force that both her feet left the ground. Jeong was not engaged in criminal activity and was not arrested. [*Index*]

Q. On July 21, 2020, without warning or justification, federal agents shot James McNulty, a peaceful protester, four times with rubber bullets and one time with a pepper ball as he was moving through the intersection of SW Main Street and SW Third Avenue. McNulty was not engaged in criminal activity and was not arrested. [*Pettibone*].

R. On July 21, 2020, without warning or justification, federal agents shot Lewis & Clark College Professor Maureen Healy in the head with an impact munition while she was peacefully protesting and not engaged in criminal activity and was not arrested. [*Western States*]

S. On July 22, 2020, without warning or justification, federal agents shot Andre Miller in the head with a tear gas cannister while he was among a group of peaceful protesters standing on Main Street between SW Fourth and SW Fifth Avenues. Miller was not engaged in criminal activity and was not arrested. [*Pettibone*]

T. On July 22, 2020 without warning or justification, federal agents launched a flash bag device at Alex Milan Tracy, striking him, as he was standing in the street near the Hatfield Courthouse, filming. Tracy was not engaged in criminal activity and was not arrested. [*Index*]

U. On July 22, 2020, without warning or justification, federal agents beat Rowan Maher with a baton while she was walking away from the Hatfield Courthouse near Lownsdale

**16 – PLAINTIFF'S COMPLAINT**

Square, causing her bruising, pain, and fear. Shorting thereafter, Maher was shot in the head with a pepper-spray ball munition as she was standing on SW Main St., between 5th and 6th Avenue, causing her fear and concern for her safety. Maher was not engaged in criminal activity and was not arrested. [*Clark et. al. v. Wolf et. al.*, Case No. 3:20-cv-01436].

V. On July 23, 2020, without warning or justification, federal agents shot Oregon Public Broadcasting staff reporter Rebecca Ellis in the hand as she was filming federal agents exiting the Hatfield Courthouse. Ellis was not engaged in criminal activity and was not arrested. [*Index*]

W. On July 24, 2020, without warning or justification, a federal agent hurled a tear gas cannister at Nichol Denison, striking her in the head, while she was peacefully protesting as a member of the Wall of Moms standing outside and approximately 8 feet away from the fence surrounding the Hatfield Courthouse. Denison was not engaged in criminal activity and was not arrested. [*Pettibone*]

X. On July 24, 2020, without warning or justification, federal agents shot photojournalist Brian Conley with impact munitions in the chest and foot and fired a tear gas canister at his head. Conley was not engaged in criminal activity and was not arrested. [*Index*]

Y. On July 24, 2020, without warning or justification, federal agents shot Oregon Public Broadcasting staff reporter Jonathan Levinson multiple times with paint ball rounds as he was trying to focus his camera to take pictures of federal agents positioned behind the courthouse fence. Levinson was not engaged in criminal activity and was not arrested. [*Index*]

Z. On July 24, 2020, without warning or justification, federal agents shot Ellen Gass with impact munitions in the left foot, fracturing her great toe, and shot her in the head and face with pepper-spray balls, as she was standing in the protest zone near the Hatfield Courthouse. Gass was lawfully and peacefully protesting on behalf of Black lives and the Black Lives Matter movement. [*Clark*].

AA.     On July 24, 2020, without warning or justification, Taylor Young was shot in the face with a high-velocity projectile as he was engaged in non-violent protest near the "Wall of Moms" in the protest zone near the Hatfield Courthouse. The impact caused injuries to his neck, throat and jaw and surgery to remove the projectile material. Young was not engaged in criminal activity and was not arrested.

BB.     On July 25, 2020, without warning or justification, federal agents shot Mac Smiff in the right side of his face with a hard-cap paint ball as he was standing in Lownsdale Square across from the Hatfield Courthouse looking down at his cell phone. Smiff was not engaged in criminal activity and was not arrested. [*Pettibone*]

CC.     On July 25, 2020, without warning or justification, federal agents shot freelance photographer Kathryn Elsesser in the arm with an impact munition as she was walking away from the park across the street from the Hatfield Courthouse. Elsesser was not engaged in criminal activity and was not arrested. [*Index*]

DD.     On July 25, 2020, without warning or justification, federal agents deployed stun grenades in the direction of Nathaniel West, which exploded close to his head, causing him hearing loss, pain, and disorientation, while he and his daughter, Lillian "Beck" West were lawfully and peacefully protesting on behalf of Black lives and the Black Lives Matter movement. [*Clark*].

**17 – PLAINTIFF'S COMPLAINT**

EE.      On July 25, 2020, without warning or justification, federal agents deployed stun grenades in the direction of Lillian "Beck" West, which exploded close to her head, perforating her left eardrum, causing immediate and potential permanent hearing loss, surgical repair, pain, disorientation, and fear. Beck was injured while she and her father, Nathaniel West, were lawfully and peacefully protesting on behalf of Black lives and the Black Lives Matter movement.

FF.      On July 25, 2020, without warning or justification, federal agents shot Kristen Jessie-Uyanik in the forehead at close range with a high-velocity projectile as she was standing arm-in-arm engaged in non-violent protest as a member of the "Wall of Moms" near the front of the Hatfield Courthouse. The impact caused a large laceration above her left eye, required stitches and resulted in permanent scarring, concussion, fear and anxiety. Jessie-Uyanik was not engaged in criminal activity and was not arrested.

GG.      On July 26, 2020, without warning or justification, federal agents shot VICE News videographer Daniel Hollis multiple times with impact munitions near his left groin and in his back as he was filming wide-angle footage of a mass of protestors in front of the courthouse. Hollis was not engaged in criminal activity and was not arrested. [*Index*]

HH.      On July 26, 2020, without warning or justification, federal agents shot volunteer medic Nathan Cohen in the chest with a tear gas cannister at close range as he was checking on his fellow protesters. The impact caused a severe chest wall contusion, onset of pre-existing congenital heart condition symptoms, and a possible heart injury. Cohen as not engaged in any criminal activity and was not arrested. [*Cohen v. Russell et. al.*, Case No. 3:21-cv-00579]

II.      On July 26, 2020, without warning or justification, federal agents shot Angela Clark in the hand with munitions, causing her injury and pain, as she was standing near the corner of SW 4th Ave, and SW Salmon St., lawfully and peacefully protesting on behalf of Black lives and the Black Lives Matter movement. [*Clark*]

JJ.      On July 27, 2020, without warning or justification, federal agents shot photojournalist Amy Katz with an impact munition in the side as she was among a group of press moving away from federal agents. Katz was not engaged in criminal activity and was not arrested. [*Index*]

KK.      On July 27, 2020, without warning or justification, federal agents shot freelance photojournalist Emily Molli with impact munitions while standing approximately 75 yards away from protesters that she was filming. Molli was not engaged in criminal activity and was not arrested. [*Index*]

LL.      On July 29, 2020, without warning or justification, a federal agent shot Ashlee Turner with tear gas canisters at close range as she was shielding another protester from the federal agent who was pointing a weapon at her. As Turner hunched down and held her umbrella up to protect the protestor, Turner was shot twice. Both canisters hit Turner, causing burns and a Humeral Avulsion Glenohumeral Ligament (HAGL) tear in her left shoulder, rendering left arm (her dominant hand) essentially useless, with possibly a permanent impairment. Turner as not engaged in criminal activity and was not arrested.

////

////

**18 – PLAINTIFF'S COMPLAINT**

37.

Upon information and belief, Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory Defendants issued orders to their subordinate federal law enforcement officers to use unnecessary and excessive force or, with knowledge of material facts approved, were deliberately indifferent to or acquiesced in the use of excessive force or, having a duty to intervene and order the cessation of use of excessive force failed to intervene and order their subordinate federal law enforcement officers to cease use of unnecessary and excessive force.

38.

Upon information and belief, no reports of improper uses of force by federal law enforcement officers were made by Defendants Russell, Jones, Morgan, Cline, Burger, Smith and or any other John Doe Supervisory Defendants Supervisory for acts occurring in Portland, Oregon, during July 2020.

39.

Upon information and belief, Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory Defendants did not take disciplinary action against any Patrol Level John Doe Defendant, inclusive of John Doe 62, for any acts occurring in Portland, Oregon during July 2020.

## THE UNLAWFUL SEIZURE OF

## PLAINTIFF ANGELINE MEAD

40.

On the evening of Saturday, July 25, 2020, Plaintiff, along with other law abiding, non-violent protesters, gathered across the street from the Hatfield Courthouse, generally in the area

**19 – PLAINTIFF'S COMPLAINT**

of Lownsdale Square, an engaged in non-violent protest in support of the Black Lives Matter Movement.

41.

For her own safety, Plaintiff wore a mask respirator to cover her nose and mouth, swim goggles over her eyes, and a light blue bicycle helmet, as Plaintiff was aware of the combat tactics the federal officers were using in the preceding nights from reports on previous protests.

42.

At or around 1:00AM, early Sunday morning, July 26, 2020, Plaintiff was standing in S.W. Main Street, between S.W. 3rd and 4th Avenue, chanting protests with other friends. Plaintiff saw federal officers fire tear gas into the crowd of protesters and heard an announcement over a loudspeaker, something about an unlawful assembly and munitions may be deployed. Plaintiff also heard people say that the "feds were coming". Plaintiff began walking away from the federal officers and gathered near the corner of S.W. 4th Avenue and S.W. Main Street with her friends to decide how to leave the area.

43.

As Plaintiff was standing on the corner, she saw a large truck-like vehicle filled with federal officers and other federal officers beside the truck on foot, suddenly start to advance towards them, approaching westbound on S.W Main Street. As the federal officers and their truck quickly advanced towards them, Plaintiff heard and saw these officers fire tear gas at retreating protesters.

44.

Plaintiff and her friends continued to walk away, westbound towards 5th Avenue. About midblock, on the north side of S.W. Main Street between S.W. 4th and 5th Avenue, Plaintiff

**20 – PLAINTIFF'S COMPLAINT**

turned her head back to check on the progress of the federal officers advancing towards her. Suddenly, and without warning, Plaintiff was shot with a high-velocity projectile in the right eye by one of the federal officers on or next to the truck. The federal officer that shot Plaintiff directly in the eye was approximately 20-30 feet away.

45.

Plaintiff immediately felt terrified and had pain and bleeding around her right eye. Plaintiff had to remove her swim goggles and was exposed to tear gas in both eyes which caused blurry vision in both of her eyes. Plaintiff immediately lost all vision in her right eye and had thought she has lost her eye. As she was overwhelmed with fear and pain, a person came to her aid and tried pouring liquid into her eyes. Plaintiff then realized that her right eye was bleeding and that she needed immediate medical attention. Plaintiff walked westbound and a heard somebody yelling for a medic. At a bus stop, a medic bandaged Plaintiff's right eye to stop the bleeding. The medic examined her eyes and asked Plaintiff why the irises in her eyes were different colors, which caused Plaintiff further distress.

46.

A medic and plaintiffs friends took Plaintiff to a volunteer ambulance, and a volunteer driver immediately transported Plaintiff and one other protest victim to the Emergency Department at Oregon Health Science University Hospital (OHSU). As Plaintiff was being transported, she was terrified that she had lost her right eye and was permanently blinded.

47.

Plaintiff arrived at OHSU at 1:57 AM and was discharged about seven hours later. A CT scan of her orbits (eye sockets) revealed no evidence of fracture but did show the right preseptal (eyelid) laceration that required several stiches. Plaintiff was discharged with retinal detachment

**21 – PLAINTIFF'S COMPLAINT**

and given strict instructions from her doctors to return for a more comprehensive eye examination, given the severity of her injury.

48.

Plaintiff retuned to the OHSU Casey Eye Institute on July 29, 2020 for a comprehensive right eye examination. Plaintiff was diagnosed with a vitreous hemorrhage of the right eye and traumatic iritis. Digital retinal imaging using B-scan ultrasonography was performed and revealed a round hole in Plaintiff's right retina. Laser retinopexy surgery was performed to repair the round hole.  Plaintiff has a small permanent scar on her right eyebrow.

49.

As a result of this traumatic incident, Plaintiff felt that she could not protect her own safety by attending the protests. Plaintiff was and remains afraid to resume her expression, despite her strong desire to do so.  Plaintiff had seen for herself that federal officers would pursue non-violent protesters blocks away from the Hatfield Courthouse, and would not hesitate to intentionally shoot people in the head with high velocity projectiles, without regard to who was a threat and who was not.

50.

Because Plaintiff was specifically targeted by unidentified federal officer(s) and intentionally shot in the head with a high-velocity projectile – clearly contrary to the proper use of such a weapon and a clear violation of the federal officer's authority and mission to protect federal property – it is beyond debate that the unidentified federal agent, and those surrounding and purportedly supervising him, targeted her to incapacitate and inflict serious bodily harm.

////

////

**22 – PLAINTIFF'S COMPLAINT**

**FIRST CLAIM FOR RELIEF: Fourth Amendment**

***Bivens – Plaintiff Cohen Against All Supervisory Defendants and John Does 62 for Excessive Force***

51.

Plaintiff Mead realleges paragraphs 1-50 as if fully set forth herein.

52.

At all times material Plaintiff had a protected liberty interest under the Fourth Amendment not to be subjected to an unreasonable seizure of her person through the application of undue, unnecessary, and excessive force.

53.

In Defendant John Doe 62's decision making and use and application of force against plaintiff, Doe 62 failed to ascertain or ignored all reasonable and objective facts and his/her acts and omissions were objectively unreasonable considering the circumstances confronting him/her for reasons which, based on information presently known to plaintiff, include the following:

A. Defendant lacked knowledge of facts sufficient to form an objectively reasonable belief that Plaintiff posed an immediate threat of bodily harm to any person.

B. Defendant lacked knowledge of facts sufficient to form an objectively reasonable belief that Plaintiff had committed or was about to commit a crime.

C. Defendant intentionally used and applied force that could cause Plaintiff serious injury or death.

D. Defendant intentionally used and applied a quantum of force that was grossly disproportionate to Plaintiff's mere presence among protesters, journalists, medics and bystanders in the vicinity of the Hatfield Courthouse.

**23 – PLAINTIFF'S COMPLAINT**

E. Defendant gave no warning of his/her intention to use force, even though it was reasonably feasible for defendant to do so.

F. Defendant intentionally misused a weapon to fire a high-velocity projectile at the head/face of a person, an application prohibited by Defendant's training and, upon information and belief, an application not authorized by the manufacturer of that weapon.

54.

Defendant John Doe 62 seized plaintiff through the application force and such use of force was unreasonable, unnecessary and excessive and violated plaintiff's rights under the Fourth Amendment.

55.

At all times material the law was clearly established in the Ninth Circuit that Defendant John Doe 62's use of force in the manner and under the circumstances used against plaintiff was objectively unreasonable and excessive.  Any reasonable law enforcement officer would have known that the force John Doe 62 used against plaintiff was excessive and violated plaintiff's right to be protected from unreasonable seizure of her person under the Fourth Amendment.

56.

Defendant Supervisors, through their pattern of knowing tolerance, if not overt encouragement, of recurrent acts of excessive force by federal law enforcement officers under their supervision, command and control, adopted and implemented a de facto policy of deployment of excessive force in repudiation of the Fourth Amendment rights of all persons attending protests in the vicinity of the Hatfield Courthouse, including plaintiff's.

////

////

////

**24 – PLAINTIFF'S COMPLAINT**

57.

Defendant Supervisors' de facto policy of deployment of excessive force against all persons attending protests in the vicinity of the Hatfield Courthouse set in motion a series of acts by their subordinate federal law enforcement officers, inclusive of Defendant John Doe 62, which they knew or should reasonably have known would cause Defendant John Doe 62 and others to inflict constitutional injury and Defendant Supervisors' de facto policy was the moving force behind the violations of plaintiff's Fourth Amendment rights.

58.

As a direct and proximate result of Defendants' actions and inactions alleged above, plaintiff was placed in fear for her life, and suffered physical and mental pain and emotional distress to her noneconomic damage in an amount to be proved at trial.

59.

As a further direct and proximate result of Defendants' actions and inactions alleged above, plaintiff incurred expenses for necessary medical care and treatment to plaintiff's economic damage in an amount to be proved at trial.

60.

Defendants engaged in the conduct directed toward Plaintiff maliciously, oppressively or in reckless disregard of Plaintiff's Fourth Amendment rights.  Plaintiff is entitled to an award of punitive damages against defendants to punish and deter them and others from similar deprivations of constitutional rights in the future.

////

////

////

////

**25 – PLAINTIFF'S COMPLAINT**

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  For compensatory noneconomic damages in an amount to be determined by a jury and for prejudgment interest on said sums.

2.  For punitive damages.

3.  For Plaintiff's costs and such other and further relief as the Court may deem just and equitable; and

4.  Plaintiff demands a jury trial for all matters triable of right to a jury.

DATED this 3rd day of May, 2021.

Respectfully submitted,

s/Christopher A. Larsen
Christopher A. Larsen, OSB 910679
Gabriel Chase, OSB 142948

**26 – PLAINTIFF'S COMPLAINT**